[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Barnes*, Slip Opinion No. 2026-Ohio-2750.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2750

THE STATE OF OHIO; M.S., APPELLANT, *v.* BARNES, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Barnes*, Slip Opinion No. 2026-Ohio-2750.]**

*Criminal law—Constitutional law—Marsy's Law—Restitution—Delayed appeals—Crime victim seeking to appeal trial court's denial of restitution is subject to procedural regulations set forth in App.R. 4(A) and App.R 5(A)—Court of appeals' judgment denying crime victim's motion for leave to file delayed appeal affirmed.*

(No. 2025-0030—Submitted December 9, 2025—Decided July 22, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 114516.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DETERS, HAWKINS, and SHANAHAN, JJ., joined and BRUNNER, J., joined except as to Part II(B).

**DEWINE, J.**

{¶ 1} This case involves a theft victim who sought restitution from her offender. The trial court did not award restitution. The victim filed a direct appeal from that ruling but later voluntarily dismissed her appeal. Some five years later, the victim sought to file a delayed appeal of the trial court's order that failed to award restitution, but the Eighth District Court of Appeals denied her leave to file a delayed appeal because the express terms of App.R. 5 limit the filing of delayed appeals to defendants in criminal and juvenile cases.

{¶ 2} The victim now seeks to challenge the Eighth District's ruling, arguing that victims have a constitutional right to pursue a delayed appeal. In effect, she asks us to judicially rewrite App.R. 5 so that she can pursue an appeal in this case. We find no constitutional infirmity that would justify a judicial rewrite of the rule through case law. So, we affirm the judgment of the court of appeals denying leave to appeal.

## I. BACKGROUND

{¶ 3} Frederick Barnes was charged with breaking into M.S.'s office and stealing a pistol and a nail gun. In October 2018, Barnes pleaded guilty to attempted breaking and entering and petty theft. The State requested restitution at the sentencing hearing. M.S. addressed the court at the hearing, and the State presented the court with paperwork supporting the restitution request. Defense counsel countered, "We're not here to try the restitution case," and suggested that restitution was best handled "as a civil matter." The court then sentenced Barnes to time served and waived court costs. The court did not mention restitution in its pronouncement of sentence, nor did it provide for restitution in its sentencing entry.

{¶ 4} M.S. filed a direct appeal of Barnes's sentence in the Eighth District, arguing that she was entitled to restitution under the Marsy's Law amendment to the Ohio Constitution. Specifically, M.S. relied on Article I, Section 10a(7), which

provides a right "to full and timely restitution from the person who commits the criminal offense . . . against the victim."

{¶ 5} Marsy's Law became effective in February 2018. When M.S. filed her appeal in December 2018, the legislature had not yet enacted legislation implementing the constitutional amendment, and there was some uncertainty as to the proper manner for a victim to enforce the rights guaranteed under Marsy's Law.

{¶ 6} While M.S.'s appeal was pending, the Eighth District rendered a decision in *State v. Hughes*, 2019-Ohio-1000 (8th Dist.). In *Hughes*, a victim sought to enforce her rights under Marsy's Law by appealing an order in a criminal case that required her to disclose the names of her medical providers so that the defendant could subpoena her medical records and furnish them to the court for an in camera review by the trial judge. *Id.* at ¶ 1-3 (Jones, J., opinion). The decision was fractured. Judge Jones's opinion was reported first and announced the court's judgment dismissing the victim's appeal, but no other judge joined the opinion. Judge Jones concluded that victims do not have standing to directly appeal from a trial court's order in a criminal case and instead should petition for an extraordinary writ. *Id.* at ¶ 16, 28. Judge Sheehan concurred in judgment only, concluding that the appeal was properly dismissed "not because [the victim] does not have standing to file this appeal but because the trial court's order is not a final appealable order . . . ." *Id.* at ¶ 31 (Sheehan, J., concurring in judgment only). In her view, because the court's order only required an in camera review of the records, the interlocutory discovery order did not meet the final-order requirements of R.C. 2505.02(B). *Id.* at ¶ 35-37. Judge Keough did not write separately but concurred in judgment only as to Judge Jones's opinion and concurred in Judge Sheehan's opinion. Although Judge Sheehan's separate opinion referred to Judge Jones's opinion as the "lead opinion," *id.* at ¶ 31, it was Judge Sheehan's opinion that represented the majority holding of the Eighth District panel.

**{¶ 7}** Despite the fractured nature of the *Hughes* decision, M.S. voluntarily dismissed her appeal in April 2019 and filed a complaint in the Eighth District seeking a writ of mandamus. The appellate court granted M.S.'s mandamus request in part and directed the trial-court judge to determine whether M.S. was entitled to restitution, and, if so, the amount of restitution. *State ex rel. [M.S.] v. Russo*, 2019-Ohio-4983, ¶ 13.

**{¶ 8}** Several factors, including an effort by Barnes to withdraw his guilty plea, *see State v. Barnes*, 2024-Ohio-2184, ¶ 11-12 (8th Dist.), caused the matter to linger in the trial court for several years after the Eighth District's mandamus order. During that period, this court decided *State v. Brasher*, 2022-Ohio-4703. In *Brasher*, a three-justice plurality concluded that a direct appeal is the appropriate remedy for a victim to challenge a trial court's failure to award restitution under Marsy's Law.[1] *Brasher* at ¶ 2, 22 (lead opinion). A fourth justice concurred in judgment only, but "agree[d] with the lead opinion that the Marsy's Law amendment grants crime victims the ability to file a direct appeal from a trial court's decision denying their request for restitution." *Id.* at ¶ 48 (DeWine, J., concurring in judgment only).

**{¶ 9}** The trial court in M.S.'s case ultimately set a restitution hearing for May 2023. *See Barnes*, 2024-Ohio-2184, at ¶ 12 (8th Dist.). Relying on *Brasher*, Barnes appealed the order setting the hearing, arguing in part that M.S. had forfeited her right to challenge the failure to award restitution by dismissing her direct appeal. *Id.* at ¶ 20. The Eighth District ruled in favor of Barnes and vacated the trial court's order directing a restitution hearing. *Id.* at ¶ 27. We declined to accept jurisdiction over M.S.'s appeal of that decision. 2024-Ohio-4713.

---

1. Not long after this court's opinion in *Brasher*, the General Assembly enacted amendments to R.C. 2930.19, which clarified that victims could pursue a direct appeal under Marsy's Law and set forth procedures for exercising that right. *See* 2022 Sub.H.B. No. 343 (effective Apr. 6, 2023).

{¶ 10} M.S. then filed a motion for leave to file a delayed appeal of the trial court's sentencing entry that had failed to award restitution. The Eighth District denied the motion and dismissed the appeal with an order stating, "App.R. 5 explicitly limits the filing of delayed appeals to criminal defendants." *State v. Barnes*, No. 114516 (8th Dist. Nov. 25, 2024).

## II. ANALYSIS

{¶ 11} We accepted M.S.'s appeal challenging the Eighth District's judgment denying her motion for leave to file a delayed appeal. She raises a single proposition of law, which asserts that victims have a constitutional right to file a delayed appeal.

### A. The Eighth District Properly Denied M.S.'s Motion for a Delayed Appeal

{¶ 12} Although the procedural posture of this case is convoluted, the analysis of the Eighth District's order denying M.S.'s motion for a delayed appeal is straightforward. App.R. 4(A)(1) requires that an appeal be filed within thirty days of an "order that is final upon its entry." Here, while M.S. timely pursued a direct appeal of the trial court's sentencing order, she voluntarily dismissed that direct appeal.

{¶ 13} Under the doctrine of res judicata, a final judgment bars a party from reasserting claims that were raised or that could have been raised at trial or in an appeal from that judgment. *See State v. Perry*, 10 Ohio St.2d 175, 180 (1967); *see also AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 15. Thus, there is a strong argument that because M.S. voluntarily dismissed her direct appeal, res judicata prevented her from further litigating the claim she later sought to raise in her delayed appeal. *Contra State v. Shifflett*, 1994 Ohio App. LEXIS 489, *3-4 (2d Dist. Feb. 9, 1994) (allowing a defendant who had previously dismissed his direct appeal to pursue a delayed appeal). The court of appeals did not deny M.S.'s motion for leave on the basis of res judicata, however. And we have never directly addressed the res judicata effect of a voluntarily

dismissed and unresolved appeal on a subsequent attempt to file a delayed appeal. We find it unnecessary to do so today because, even setting aside the res judicata problem, the court of appeals properly denied M.S. leave to file a delayed appeal.

{¶ 14} The only provision allowing for an appeal outside the limits established by App.R. 4(A) is App.R. 5(A). That provision provides, "After the expiration of the thirty day period provided by App.R. 4(A) for the filing of a notice of appeal as of right, an appeal may be taken by a *defendant* with leave of the court to which the appeal is taken in the following classes of cases: (a) Criminal proceedings; (b) Delinquency proceedings; and (c) Serious youthful offender proceedings." (Emphasis added.) App.R. 5(A)(1). Here, the Eighth District correctly determined that because M.S. was not a "defendant" in any of the proceedings, she could not pursue a delayed appeal.

{¶ 15} M.S. effectively asks that the rule be rewritten through judicial decision to allow victims the opportunity to seek leave to file a delayed appeal. But neither the Eighth District nor this court possesses such authority.

{¶ 16} The Ohio Constitution sets forth the procedure by which rules governing practice and procedure are promulgated and amended. Under Article IV, Section 5(B), the Supreme Court has the authority to "prescribe rules governing practice and procedure in all courts of the state," but such rules may "not abridge, enlarge, or modify any substantive right." The Constitution specifies how this power may be exercised. Proposed rules must be filed with the General Assembly no later than January 15, and proposed amendments must be filed by May 1. *Id.* Such rules go into effect on July 1 unless "the General Assembly adopts a concurrent resolution of disapproval" before that date. *Id.* To implement our constitutional authority, we have established a Commission on the Rules of Practice and Procedure that receives and considers proposed rule changes and recommends rule amendments to this court. *See* The Supreme Court of Ohio, Commissions, *Commission on the Rules of Practice*

*& Procedure*, https://www.supremecourt.ohio.gov/courts/advisory/commissions/ commission-on-the-rules-of-practice-procedure/ (accessed June 9, 2026). We also generally publish rules for public comment before their adoption. *See* The Supreme Court of Ohio, Commissions, *Constitution*, https://www.supremecourt.ohio.gov /courts/advisory/commissions/commission-on-the-rules-of-practice-procedure /constitution/ (accessed June 9, 2026).

{¶ 17} The Ohio Constitution thus prescribes a specific procedure for amendment of the rules of practice and procedure that involves both this court and the General Assembly. We have no authority to bypass this constitutional procedure and simply amend those rules by judicial decision in an individual case. While there may be good reasons to allow a victim to request leave to file a delayed appeal in at least some situations, that matter must be left to the rulemaking process.

### B. We Reject M.S.'s Constitutional Challenge

{¶ 18} M.S. argues that victims have a constitutional right under the state and federal Constitutions to file delayed appeals. Because App.R. 4(A) and App.R. 5(A) provide otherwise, her challenge would require us to find that these rules are violative of the state or federal Constitutions. We note at the outset that it is not clear that even if M.S. were to succeed in her constitutional challenge, her victory would be anything other than Pyrrhic. After all, if App.R. 5(A) really is unconstitutional for affording the possibility of a delayed appeal to criminal defendants but not victims, there is a good argument that the appropriate remedy would be to refuse to enforce that rule, rather than to rewrite the rule outside our rulemaking process. But we need not tarry on the appropriate remedy should M.S. succeed on her constitutional challenge, because her arguments lack merit.

{¶ 19} M.S. locates her claimed right to file a delayed appeal under the Marsy's Law amendment in the Ohio Constitution and in procedural-due-process and equal-protection guarantees of the Ohio and United States Constitutions. In essence, she argues that constitutional requirements compel us to decline to follow

the plain text of App.R. 4(A) and App.R. 5(A). But "it is only when . . . clear incompatibility between the constitution and the law appear, that the judicial power can refuse to execute it." *Cincinnati, Wilmington & Zanesville RR. Co. v. Clinton Cty. Commrs.*, 1 Ohio St. 77, 82-83 (1852). We find no such incompatibility.

### 1. Marsy's Law

{¶ 20} M.S. first argues that Marsy's Law provides her with a right to a delayed appeal. When interpreting a provision of the Ohio Constitution, we apply its original public meaning. *State ex rel. Cincinnati Enquirer v. Bloom*, 2024-Ohio-5029, ¶ 40. "The first consideration is always a provision's text." *State ex rel. GateHouse Media Ohio Holdings II, Inc. v. Columbus Police Dept.*, 2025-Ohio-5243, ¶ 17. Relevant here are Section 10a(A) and (B) of the amendment. Section 10a(A) provides that "[t]o secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused." The provision then enumerates ten specific rights, including a right to restitution. Ohio Const., art. I, § 10a(A)(1) through (10). None of the rights identified in this provision, however, relate to a right to an appeal. The right to appeal is provided for in a different section, Section 10a(B), which specifies:

> The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.

{¶ 21} We have previously interpreted Section 10a(B)'s grant of authority "to petition the court of appeals" as conferring a right to a direct appeal following a trial court's denial of restitution. *Brasher*, 2022-Ohio-4703, at ¶ 22 (lead opinion). But a right to an appeal is not a right to a *delayed* appeal, and nowhere in Marsy's Law is a right to a delayed appeal explicitly conferred.

{¶ 22} Despite the lack of direct textual support, M.S. makes two arguments for reading an implicit right to a delayed appeal into Marsy's Law. First, M.S. asserts that a victim's right to an appeal is absolute and that no restrictions can be placed on it. She reasons that because the Ohio Constitution trumps all other procedural rules and the text of Marsy's Law contains no time constraints for seeking appellate review, no such limitations can be imposed against a victim. Under this view, any timeliness requirements are impermissible, and a victim may appeal at any point in the future.

{¶ 23} It is worth pausing first to note the expansiveness of M.S.'s argument. It would mean that unlike all other categories of litigants, victims could appeal at any time, and the government would be prevented from applying normal procedural limitations—e.g., notice and filing requirements, page limitations, and the like—that affect a victim's right to appeal.

{¶ 24} "In construing constitutional text that was ratified by direct vote, we consider how the language would have been understood by the voters who adopted the amendment." *Centerville v. Knab*, 2020-Ohio-5219, ¶ 22. This analysis is undertaken "'in light of our history and traditions.'" *Bloom*, 2024-Ohio-5029, at ¶ 35, quoting *State v. Smith*, 2020-Ohio-4441, ¶ 29. At the time Marsy's Law was adopted, appeals in Ohio were subject to the time limitations established by the Rules of Appellate Procedure. *See* App.R. 4. Indeed, timeliness requirements for filing appeals are ubiquitous and, as far as we can discern, exist across all jurisdictions in the United States.

{¶ 25} Fair to say, procedural rules often require timely assertions of a constitutional right. In the words of the United States Supreme Court, "No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944). And procedural rules may regulate constitutional rights in other ways as well. *See, e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 411 (1988) (explaining that the Sixth Amendment right to compulsory process is not absolute and may be conditioned upon "adherence to rules of procedure that govern the orderly presentation of facts and argument").

{¶ 26} The point is that it is widely understood that procedural rules can channel the exercise of constitutional rights, and a constitutional right can be waived if not timely asserted. Against this backdrop, it is implausible to suggest that when voters enacted Marsy's Law, they were conferring an open-ended right to appeal at any point in the future, not subject to any procedural regulation by statute or rule.

{¶ 27} For her second argument, M.S. points to the language in Section 10a(A) of Marsy's Law, which states that "a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused." She argues that because criminal defendants have a right to request leave to file a delayed appeal, victims must be granted the right to file appeals outside the timeline established by the appellate rules. But this argument misunderstands the language and structure of Section 10a(A). The list of rights following Section 10a(A)'s "no less vigorous" clause does not include the right to appeal. That right is granted in Section 10a(B). Thus, by plain text, the right to appeal is not among the enumerated rights that Marsy's Law requires to be "protected in a manner no less vigorous than the rights afforded to the accused."

{¶ 28} It is true that under Article I, Section 10a(A)(7), a victim's right to full and timely restitution is among the rights that are to be "protected in a manner no less vigorous than the rights afforded to the accused." But, of course, a criminal defendant has no right to restitution. So, it cannot violate Section 10a(A)(7) to condition a victim's right to challenge a failure to award restitution upon the timely filing of an appeal.

### 2. Due Process

{¶ 29} M.S. next tries to locate a right to a delayed appeal in the Due Process Clause of the Fourteenth Amendment to the United States Constitution, arguing that her procedural-due-process rights were violated because she "has yet to be provided a *meaningful* opportunity to be heard." (Emphasis in original.) But M.S. had an opportunity to be heard through the maintenance of a direct appeal. The problem is not that M.S. lacked an opportunity to appeal the trial court's decision, but that she abandoned that opportunity when she voluntarily dismissed her direct appeal.

{¶ 30} M.S.'s real complaint is that she dismissed her direct appeal in purported reliance on Judge Jones's solo opinion in *Hughes*, 2019-Ohio-1000 (8th Dist.). It is not clear, however, why M.S. relied on Judge Jones's opinion. Although the manner in which the Eighth District formatted the *Hughes* opinion was unusual, it should have been clear to M.S. that Judge Jones's opinion represented the opinion of only one judge, not the majority of the three-judge panel. And if M.S. was uncertain about whether mandamus or direct appeal was the proper manner in which to exercise her rights under Marsy's Law, the prudent course would have been to continue her direct appeal while at the same time also pursuing relief in mandamus. Had she done so and had the Eighth District ultimately dismissed her direct appeal, she could have sought discretionary review of that decision in this court.

**{¶ 31}** At bottom, M.S. made a strategic decision to dismiss her direct appeal and pursue a mandamus claim instead. We sympathize with M.S. in as much as there existed uncertainty about the proper way for a victim to challenge a trial court's decision under Marsy's Law before our decision in *Brasher* and the General Assembly's amendments to R.C. 2930.19. But the fact that M.S. made a legal miscalculation does not give rise to a violation of the Due Process Clause of the Fourteenth Amendment.

**{¶ 32}** M.S. also makes a cursory argument under Article I, Section 16 of the Ohio Constitution, which states: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." But she does not develop any argument under that provision that is independent of her federal procedural-due-process argument. And we find nothing in the Ohio provision that would allow M.S. to pursue an appeal outside the framework of App.R. 4(A) and App.R. 5(A).

### 3. Equal Protection

**{¶ 33}** M.S. also contends that denying victims a right to a delayed appeal violates the equal-protection clauses of the Ohio and United States Constitutions. The Fourteenth Amendment to the United States Constitution prohibits any state from denying any person "within its jurisdiction the equal protection of the laws." The first step in assessing a Fourteenth Amendment equal-protection challenge is identifying the appropriate standard of review. *Ferguson v. State*, 2017-Ohio-7844, ¶ 31. When a classification does not involve a suspect class or unevenly burden a fundamental right, the classification will be upheld if it is "rationally related to a legitimate government interest." *Id.* Laws that implicate a fundamental constitutional right or target a suspect class, however, must survive strict scrutiny, *State v. O'Malley*, 2022-Ohio-3207, ¶ 22, citing *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 64, which requires that the classification "be narrowly tailored

to serve a compelling state interest," *State v. Thompson*, 2002-Ohio-2124, ¶ 13 (lead opinion), citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000).

{¶ 34} Under federal equal-protection standards, M.S.'s claim is subject to rational-basis review. Crime victims are not a suspect class. *See San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973) (describing a "suspect class" as one that is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process"); *see also Ondo v. Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015) (explaining that the United States Supreme Court "has never defined a suspect or quasi-suspect class on anything other than a trait that is definitively ascertainable at the moment of birth, such as race or biological gender"). Nor is there a fundamental right to pursue a delayed appeal. *See Rodriguez* at 33-34 (a fundamental right is one "explicitly or implicitly" guaranteed by the federal Constitution).

{¶ 35} Recognizing as much, M.S. concedes that rational-basis review applies to her federal claim. Upon such review, a classification "'must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Am. Assn. of Univ. Professors, Central State Univ. Chapter v. Central State Univ.*, 1999-Ohio-248, ¶ 11, quoting *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).

{¶ 36} While the Ohio Constitution accords significant protection to crime victims, there are rational reasons to accord criminal defendants an opportunity to seek leave to file a delayed appeal, but not crime victims. Most significantly, a criminal sentence may subject a defendant to a loss of liberty, and in some cases even death. This is not to diminish the substantial harms inflicted upon crime

victims, but the injuries that may befall a victim from an imperfect criminal proceeding do not extend to the loss of one's liberty. Just as our rules do not allow prosecutors and civil litigants the right to ask for leave to file a delayed appeal, there are rational reasons not to extend such latitude to victims. Thus, App.R. 5(A)'s limits on who may file delayed appeals easily survives federal rational-basis review.

{¶ 37} M.S. also argues that she has a right to pursue a delayed appeal under Article I, Section 2 of the Ohio Constitution. Approved by voters in 1851, that section provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly." Ohio Const., art. I, § 2. There is good reason to think that the provision was originally understood as having a different meaning than the federal equal-protection clause of the Fourteenth Amendment. Not only are the provisions differently worded, but the Ohio provision was adopted nearly two decades before the Reconstruction-era Fourteenth Amendment and has its own unique history. *See generally Stolz v. J & B Steel Erectors, Inc.*, 2018-Ohio-5088, ¶ 28-44 (Fischer, J., concurring). Nonetheless, for decades we have treated these guarantees as "essentially identical" and employed the same analysis under both provisions. *Kinney v. Kaiser Aluminum & Chem. Corp.*, 41 Ohio St.2d 120, 123 (1975).

{¶ 38} Some members of this court have rightly suggested that we should revisit this understanding in an appropriate case in which a litigant presents arguments based on "the unique language and historical background of this state's Equal Protection Clause." *Stolz* at ¶ 28 (Fischer, J., concurring); *see also id.* at ¶ 44; *Sherman v. Ohio Pub. Emps. Retirement Sys.*, 2020-Ohio-4960, ¶ 40, fn. 5 (DeWine, J., dissenting). M.S. would like us to change how we analyze the Ohio

14

provision, but she does not present any argument based on the text of that provision or its history. Instead, she simply asks us to depart from federal methodology in the analysis of the Ohio provision, but only in part. She would like us to retain the interest-balancing framework embodied in the federal tiers of scrutiny. But she suggests that instead of the rational-basis review required by the federal methodology, we should apply strict scrutiny to her Ohio Constitutional claim. She argues that this is appropriate because, in her view, the Ohio Constitution recognizes as fundamental both a "property right to a restitution order" and a right to "meaningful appellate review."

{¶ 39} We decline to accept M.S.'s invitation to create a hybrid version of the federal equal-protection standard for analysis of Article I, Section 2 claims. "In construing our state Constitution, we look first to the text of the document as understood in light of our history and traditions." *Smith*, 2020-Ohio-4441, at ¶ 29. But M.S. offers no support in the text or history of Article I, Section 2, for her proffered mode of analysis. Nor can we come up with any independent rationale that would justify interpreting that provision to employ federal tiers of scrutiny analysis while at the same time vastly expanding upon the federal definition of what constitutes a fundamental right.

{¶ 40} Article I, Section 2 directs that "[a]ll political power is inherent in the people" and that "[g]overnment is instituted for their equal protection and benefit." We find nothing in that provision that requires a judicial rewrite of our appellate rules to allow M.S. to reinstitute an appeal that she voluntarily dismissed some seven years ago.

### III. CONCLUSION

{¶ 41} We affirm the judgment of the Eighth District Court of Appeals denying M.S.'s motion for leave to file a delayed appeal.

Judgment affirmed.

_____

Elizabeth A. Well, Ohio Crime Victim Justice Center, for appellant.

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, for appellee.

Elizabeth R. Miller, Ohio Public Defender, and Stephan P. Hardwick, Assistant Public Defender, urging affirmance for amicus curiae, Office of the Ohio Public Defender.

_____